THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM BRUNO, Plaintiff in Error.

*Opinion filed April 17, 1936.*

ALFRED E. ROTH, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Plaintiff in error, Sam Bruno, otherwise called Sam Cali, (hereinafter referred to as defendant,) was convicted of murder on a trial before a jury in the criminal court of

Cook county and sentenced to the penitentiary for four-teen years. From that judgment the defendant has sued out this writ of error.

About 10:30 on the morning of September 15, 1934, the deceased, Joseph Adduci, was reclining in a barber chair nearest the street in the shop owned by August Thomas and Paul Philemon, at 11857 South Michigan avenue, in Chicago. The shop was about twelve feet wide and lo-cated on the east side of the street and about seventy-five feet from the northeast corner of 119th street and Michi-gan avenue. A small back room was separated from the shop proper by a partition, in which there was a door. A door in the rear wall led to an alley. Philemon was ab-sent, but Thomas, the other proprietor, was shaving Ad-duci. At least two customers entered the shop while the deceased was being shaved, one getting into the chair of the other barber, Sapienza, and one Hodorowicz, who seated himself in one of the customers' chairs on the south side, near the partition, where he was reading a newspaper. It is a disputed question whether any other person was then in the shop. Thomas testified that while shaving the deceased he saw a car stop directly across the street and two or three men get out, whom he next saw just after they got inside the front door of the shop; that they were armed, and the first man, when about one foot away, shot Adduci twice. He could not remember whether the other men fired or not. Thomas immediately fell to the floor along the south wall, where he remained until everybody was out of the shop. He stated that Sapienza was then in the rear of the shop. He also testified he thought the defendant came into the shop a few minutes before the shooting and was sitting in a customer's chair. However, on being exam-ined with reference to his prior testimony at the inquest, he admitted he then swore he saw three men get out of the car and all came into the shop. He asserted he could remember nothing further of the occurrence. Frank Ho-

dorowicz, who was seated in the customer's chair farthest from the front door, said that he saw no one else waiting and noticed no one come in before the shooting. He says he ran to the rear door and went home. Sapienza stated that three men came in the front door, close together. He saw the first one draw a gun and noticed the others were also armed; saw the first man step forward to the chair where Adduci was reclining and put the gun alongside his ear and shoot him twice; saw the defendant, who was the second man to enter, shoot once immediately thereafter. He also testified that at the time the three men entered only five men were in the shop, namely, Thomas, Adduci, Hodorowicz, Sapienza and the man he was shaving; that there was no other customer waiting; that when the shooting started Sapienza began backing towards the rear room, and there saw Hodorowicz pull a gun and shoot towards the wall.

Officer Richards, at the corner of 119th street and Michigan avenue, heard shots coming from the block north, took out his pistol, ran to the northwest corner of the intersection, saw three men, about seventy-five feet away, coming out of the barber shop and running west across the street toward a car parked there facing south. He called out in a loud voice, "I am a police officer," and immediately there were two flashes of fire from the three men. The officer then fired at the front man, when all three stopped for a second in the middle of the street and then ran towards the rear of the car. Each of the three in the meantime having drawn revolvers, one of these men, the defendant, ran towards the rear of the car.

Joseph Willis was on the southeast corner of 119th street and. Michigan. He saw three men with revolvers in their hands running west from the barber shop, about three or four feet apart, toward a car on the opposite side of the street; saw officer Richards shooting at .them and noticed two of them shooting at Richards; saw one man

fall on the sidewalk with his feet in the gutter, just behind the car; saw one of the men drive the car south and the other standing on the running-board. Willis then went to the fallen man and identified him as the defendant.

Frank Joseph Kopp was in a tavern three doors north of the barber shop and heard shots; came out and saw officer Richards directly across the street at the west curb shooting at an automobile which was then standing still; saw a man on the running-board shooting at Richards, and saw the car drive away and a man lying on the sidewalk and partly off the curb. He identified this man as the defendant.

The evidence showed that in addition to the two bullets that entered the deceased, one above the ear and one in the neck, other bullets were found on the side of the shop premises embedded in the mirror and the walls and bullet holes through the partition.

Four witnesses testified to the defendant's prior good reputation. The defendant testified he was engaged in selling a clothes-washing fluid; that his brother-in-law was out of employment and he was trying to help him get a job, and an acquaintance had suggested the deceased, who was employed in the water-pipe extension department of Chicago and then a stranger to the defendant, would be able to get his brother-in-law a job; that he had seen the deceased about it on two occasions prior to the day of the shooting and had an appointment to meet him on the morning of September 15, about 9:30, at the saloon of the deceased's brother, Alex, which was located about two blocks east of Michigan avenue; that when he arrived a little late Alex Adduci informed him that Joseph had gone to a barber shop on Michigan avenue, in the 118th or 119th block; that witness walked over there and saw the deceased in the first barber chair and said hello; that Joseph asked him to wait and he would see him; that there were then about five people in the shop; that after the defendant had been

waiting for several minutes two men came in the front door and started shooting; that he ran to the back room and someone shot in his direction; that he then pulled his gun and fired twice at the men who had come in, who then started to run, and he ran after them about twenty feet back, but as he came out of the front door "everything went blind on me," and the next he knew was when he recovered consciousness in the hospital. He gave as the reason for carrying a gun that day, that, some time before, a truck driver had warned him two men had made threats against him about delivering the article he was selling and he feared trouble on account of it.

It is a significant fact that while the defendant testified everything went blind as he ran out the front door yet he came out just behind the other two men, continued running across the street, was not seen shooting at the other two men, and was shot behind the car on the opposite side of the street.

Alex Adduci, brother of the deceased, testified that the defendant did come to his saloon that morning about 9:30 or later and inquired for Joseph, but witness did not tell him where he could be found, as he did not know where he was.

Two fire-arm specialists testified for the defendant to the effect that from tests they had made the fatal bullets were not fired from the defendant's gun.

The defendant charges error in excluding the testimony of a witness, Nuccio, offered for the purpose of impeaching the credibility of officer Richards' sense of observation. Richards had testified that Nuccio was one of three armed men who came from the shop. The defendant sought to prove by Nuccio that he was arrested on September 20 in connection with the death of Adduci but he had not been indicted and was not in custody. Since no issue was made on the trial as to whether Nuccio was one of the men the court properly excluded his offered testimony.

We have repeatedly held the law has committed to the jury the determination of the credibility of the witnesses and the weight to be accorded their testimony. Where the evidence is merely conflicting this court will not substitute its judgment for that of the jury in a case where there is sufficient credible testimony to convict and the verdict is not palpably contrary to the weight of the evidence, but the judgment of conviction will be affirmed. *People* v. *Deal,* 361 Ill. 225; *People* v. *Abelsky,* 359 id. 387; *People* v. *Wynekoop,* id. 124; *People* v. *Bolger,* id. 58.

The defendant also complains of the giving of the following instructions:

"The defendant under the law is presumed to be innocent of the charge in the indictment, and this presumption remains throughout the trial with the defendant until you have been satisfied by the evidence in the case beyond all reasonable doubt of the guilt of the defendant."

"No prejudice should arise from the fact that the defendant on the day in question was armed with a weapon, unless you are further satisfied from all the facts and circumstances in evidence that the said weapon was used, directly or indirectly, in the commission of the crime charged."

The form of the first instruction was approved by this court in *People* v. *Auriene,* 361 Ill. 440, and in *People* v. *Touhy,* id. 332. It is urged by the defendant that the second instruction is confusing, assumes a prejudice and does not clearly give the defendant the benefit of excluding the prejudice that might arise by reason of the defendant merely carrying a pistol. The instruction is not subject to the vice charged against it. We fail to see how the defendant's rights could have been prejudiced by the giving of such instruction.

The defendant was given a fair trial and there is sufficient evidence to support his conviction.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*